FILED
2021 FEB 25 AM 10:33
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SARAH CASTILLO, VIKTORIA SVENSSON, and ROBIN BEAN, <br><br> Plaintiffs, <br><br> v. <br><br> DUKE CAPITAL, LLC, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO COMPEL ARBITRATION** <br><br><br> Case No. 2:20-cv-00229-JNP-JCB <br><br> District Judge Jill N. Parrish |

Before the court is Defendant Duke Capital, LLC's ("Duke Capital") Motion to Compel Arbitration (the "Motion"). ECF No. 17. The court entertained oral argument on the Motion on January 29, 2021. Having reviewed the memoranda, including supplemental authority filed on January 25, 2021 (ECF No. 35), and considered the oral arguments raised, the court denies the Motion.

## BACKGROUND

Plaintiffs Sarah Castillo ("Castillo"), Viktoria Svensson ("Svensson"), and Robin Bean ("Bean") (collectively, "Plaintiffs") each entered into individual promissory notes ("Notes") to obtain personal loans. Subsequently, all three Plaintiffs defaulted on their Notes. All rights, titles, and interests in Svensson and Bean's Notes were each sold to Buyers Holdings, LLC ("BH"), and BH then sold the same to Duke Capital. All rights, title, and interest in Castillo's Note[1] were sold

---

[1] As one of their arguments for denying Duke Capital's Motion, Plaintiffs contend that Duke Capital has failed to adequately establish a chain of assignment for Castillo's Note. As set forth

to National Debt Holdings, LLC, which then sold the same to Debt Management Partners, LLC ("DMP"). DMP then sold the rights, title, and interest in Castillo's Note to Duke Capital.

Subsequently, Duke Capital separately sued each Plaintiff in Utah state court to collect the unpaid balances on their Notes. Each Plaintiff failed to answer, and Duke Capital sought and obtained default judgment against Castillo, Svensson, and Bean on April 9, 2019, June 3, 2019, and July 26, 2019, respectively.

Each Plaintiff's Note contains an arbitration provision requiring binding arbitration on an individual basis, waiving the right to a jury trial, and citing the Federal Arbitration Act ("FAA") as the governing law. Each Note also states that its terms are binding on the signing parties as well as on any subsequent holder of the Notes. Finally, each arbitration provision contains an opt-out and/or rejection provision. All three Plaintiffs acknowledged that they read and understood the terms of the arbitration provisions, and none of the Plaintiffs exercised their opt-out or rejection rights.

On or about March 10, 2020, Castillo and Svensson filed a complaint and demand for a jury trial in Utah state court against Duke Capital based on Duke Capital's prosecution of allegedly "bogus debt collection actions" without the required license. ECF No. 2-2. Castillo and Svensson asserted individual and class claims for violation of the Fair Debt Collection Practices Act ("FDCPA"), violation of the Utah Consumer Sales Practices Act ("UCSPA"), declaratory judgment, and injunctive relief. *Id.* Castillo and Svensson also asserted individual claims for intrusion upon seclusion. *Id.* On April 6, 2020, Duke Capital properly removed Castillo and

---

below, the court finds that Duke Capital has waived its right to compel arbitration. Accordingly, the court need not address the adequacy of the chain of assignment at this juncture.

Svensson's lawsuit to this court based on federal question jurisdiction. ECF No. 2. On April 10, 2020, Plaintiffs filed an amended complaint adding Bean as a plaintiff in the lawsuit and asserting the following claims: individual (on behalf of Bean) and class claims for violation of the FDCPA; individual and class claims on behalf of all Plaintiffs for violation of the UCSPA; individual and class claims on behalf of all Plaintiffs for declaratory judgment and injunctive relief; individual claims on behalf of all Plaintiffs for intrusion upon seclusion; and individual and class claims on behalf of Plaintiffs for unjust enrichment. ECF No. 5.

Duke Capital answered Plaintiffs' amended complaint on April 14, 2020, stating in part that the underlying Notes may be subject to binding arbitration. ECF No. 7. Apart from a motion for and order granting an extension for Plaintiffs to file a motion for class certification (ECF Nos. 14, 16), the parties engaged in no other motion practice prior to Duke Capital filing the Motion on August 7, 2020 (ECF No. 17). On August 11, 2020, Magistrate Judge Jared C. Bennett granted Plaintiffs and Duke Capital's joint motion to stay proceedings pending resolution of the Motion. ECF No. 23.

## DISCUSSION

Plaintiffs acknowledge that they each signed arbitration agreements that encompass the instant dispute. But Plaintiffs allege that Duke Capital waived its right to compel arbitration when it filed and prevailed in its state debt collection suits against each Plaintiff.[2] The parties dispute whether state or federal law applies to the issue of waiver. Plaintiffs distinguish between Utah contractual waiver and federal litigation waiver. Plaintiffs argue that Duke Capital waived its right

---

[2] Although Duke Capital analyzes the arbitrability of Plaintiffs' claims in its Motion, the court does not reach that issue here. As set forth below, the court finds that Duke Capital has waived its right to compel arbitration. Accordingly, the court need not address the arbitrability of the claims.

3

to arbitrate under Utah contractual waiver law when it pursued and obtained judgments in its state court debt collection suits against each Plaintiff. In the alternative, Plaintiffs argue that Duke Capital waived its right to arbitrate under federal litigation waiver law. Duke Capital responds that the court should apply federal waiver law and find no waiver. Duke Capital alternatively argues that there is no waiver under Utah law.

I.     **Choice of Law**

Case law surrounding issues of waiver in the context of arbitration agreements is confusing and muddled, with both state and federal courts often conflating two distinct forms of waiver: contractual waiver and litigation waiver. Under Utah law,[3] contractual waiver requires proof of an "intentional relinquishment of a known right." *Mounteer Enters., Inc. v. Homeowners Ass'n for the Colony at White Pine Canyon*, 422 P.3d 809, 812 (Utah 2018) (citation omitted). Federal and Utah litigation waiver in the context of arbitration agreements, however, examine the litigation conduct of the party who is alleged to have waived arbitration. *See BOSC, Inc. v. Bd. of Cty. Comm'rs of Bernalillo*, 853 F.3d 1165, 1170 (10th Cir. 2017); *Cedar Surgery Ctr., LLC v. Bonelli*, 96 P.3d 911, 914 (Utah 2004). To determine whether Duke Capital waived its right to compel arbitration, the court must first determine which waiver standard applies.

All three of the Plaintiffs' arbitration agreements state that they are governed by the FAA (ECF Nos. 18-1 at 2, 19-1 at 3, 19-2 at 3). Section 2 of the FAA evinces the liberal federal policy in favor of arbitration agreements, declaring that a written arbitration agreement "shall be valid,

---

[3] All three of the Plaintiffs' arbitration agreements contain a governing law provision providing that Utah law will govern except to the extent that the agreements are governed by federal law and the FAA. ECF Nos. 18-1 at 2, 19-1 at 3, 19-2 at 3. Thus, the court applies Utah law in this choice of law analysis.

irrevocable, and enforceable." 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A fundamental purpose of the FAA is to enforce parties' freedom to contract. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (recognizing one goal of the FAA as "enforcement of private agreements"); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) ("The FAA reflects the fundamental principle that arbitration is a matter of contract."). To that end, the FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citation omitted). Consistent with this purpose of enforcing agreements to arbitrate, the Supreme Court has found that, under the FAA and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of *waiver*, delay, or a like defense to arbitrability." *Moses*, 460 U.S. at 24–25 (emphasis added) (citations omitted).

Nevertheless, Section 2 of the FAA contains a saving clause providing that arbitration agreements may be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While the FAA itself does not provide clear guidance on the choice of law issue before the court, the Supreme Court has interpreted the saving clause to require the application of state law "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). While *Perry* presented issues of standing to enforce an arbitration agreement and

unconscionability, *id.*,[4] the Supreme Court later repeated its *Perry* observation, holding that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements," *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996) (citations omitted). The Court clarified that courts may not "invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." *Id.* at 687 (citations omitted). The Supreme Court reiterated this position in *AT&T Mobility LLC v. Concepcion*, and then applied a generally applicable state law contract defense—unconscionability—to an arbitration agreement. 563 U.S. 333, 339–40 (2011) (citations omitted).[5]

Contractual waiver under Utah law is a defense to the enforceability of a contract that does not apply only to arbitration provisions. *See, e.g.*, *Mounteer*, 422 P.3d at 812 (applying contractual waiver to a general breach of contract dispute).[6] Accordingly, the court will apply Utah contractual

---

[4] This interpretation of the saving clause was also dicta. *See Perry*, 482 U.S. at 492 n.9.

[5] At oral argument, counsel for Plaintiffs cited *BOSC, Inc. v. Bd. of Cty. Comm'rs of Bernalillo*, 853 F.3d 1165 (10th Cir. 2017), as authority that the Tenth Circuit has contemplated the applicability of state law to the issue of waiver of the right to compel arbitration, and as evidence that the applicability of state versus federal law is an unsettled issue. *BOSC* does not provide clear authority for applying state law to the present dispute. Indeed, the *BOSC* court ultimately ruled based upon the federal waiver standard. *Id.* at 1174–76. But *BOSC* does not foreclose the applicability of state waiver law to the issue of waiver of the right to compel arbitration. *See id.* at 1173–74.

[6] In contrast, litigation waiver under Utah law in the context of arbitration agreements (hereinafter, "Utah arbitration waiver") is a defense to the enforceability of a contract that specifically applies to arbitration agreements. *See Cedar Surgery*, 96 P.3d at 914. Utah contractual waiver only requires proof of an "intentional relinquishment of a known right." *Mounteer*, 422 P.3d at 812 (citation omitted). Utah arbitration waiver, however, focuses on a party's conduct during the course of litigation and requires the party alleging waiver to demonstrate both: "(1) that the party seeking arbitration substantially participated in the underlying litigation to a point inconsistent with the intent to arbitrate; and (2) that this participation resulted in prejudice to the opposing party." *Cedar Surgery*, 96 P.3d at 914 (citation omitted).

In short, the standards for establishing contractual waiver and arbitration waiver differ under Utah law. Because this court may not "invalidate arbitration agreements under state laws applicable *only*

waiver law rather than Utah or federal litigation waiver law to determine whether Duke Capital waived its right to compel arbitration.[7] *See AT&T Mobility*, 563 U.S. at 339–40. *Contra Doctor's to arbitration provisions,"* *Doctor's Assocs.*, 517 U.S. at 686–87, the court analyzes Plaintiffs' waiver claims under Utah contractual waiver law.

[7] Duke Capital argues that the court should apply the federal litigation waiver factors applicable to arbitration agreements adopted by the Tenth Circuit in *Peterson v. Shearson/Am. Express, Inc.*, 849 F.2d 464 (10th Cir. 1988), *superseded on other grounds by* 9 U.S.C. § 16. The factors are as follows:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*BOSC*, 853 F.3d at 1170 (quoting *Peterson*, 849 F.2d at 467–68).

The court disagrees that federal litigation waiver law applies here. Under Supreme Court precedent interpreting the FAA set out above, *Doctor's Assocs.*, 517 U.S. at 686–87, Utah contractual waiver law, rather than federal litigation waiver law, is applicable. Moreover, the *Peterson* factors are designed to assist a court in evaluating whether a party's litigation conduct in the case before the court constituted a waiver of that party's right to compel arbitration of that particular case. Indeed, four of the six *Peterson* factors address that specific issue. But that is not the issue before the court in this case.

Plaintiffs do not rely upon Duke Capital's litigation conduct in this case as the basis for their waiver claim. Rather, Plaintiffs assert that Duke Capital's conduct in prior state court litigation evidenced Duke Capital's intentional relinquishment of its right to compel arbitration. The *Peterson* factors are therefore inapposite because they fail to encompass the conduct giving rise to Plaintiffs' claim that Duke Capital waived its right to compel arbitration. *Cf. Nelson v. Liberty Acquisitions Servicing LLC*, 374 P.3d 27, 28–32 (Utah Ct. App. 2016) (holding that a debt collector's conduct in litigating a prior debt collection action constituted a waiver of the debt collector's right to compel arbitration in later litigation brought by the debtors under the FDCPA and the UCSPA).

*Assocs.*, 517 U.S. at 687–89 (declining to invalidate an arbitration agreement based on a state law that only conditioned the enforceability of arbitration agreements—not contracts generally—on a particular notice requirement).

## II.     Contractual Waiver Under Utah Law

Utah contractual waiver requires proof of an "intentional relinquishment of a known right." *Mounteer*, 422 P.3d at 812 (citation omitted). In arguing Utah contractual waiver, Plaintiffs cite *In re Estate of Flake*, 71 P.3d 589, 599 (Utah 2003), which also requires proof of prejudice to establish waiver. But *Mounteer* expressly abrogated *Estate of Flake* and other cases requiring proof of prejudice to establish contractual waiver, finding that "[t]he prejudice requirement is a doctrinal misfit in the law of waiver." 422 P.3d at 815 (citation omitted).

Applying Utah contractual waiver law, the court finds that Duke Capital has waived its right to compel arbitration. Duke Capital obtained the rights, titles, and interests to all three Plaintiffs' Notes. The Notes contain what Duke Capital itself has characterized as broad arbitration provisions. The "claims" and "disputes" covered by the arbitration provisions are indeed sweeping. Castillo's arbitration provision applies to the following:

> [A]ny claim, dispute or controversy between you and us [Duke Capital, as an assign], whether preexisting, present or future, that in any way arises from or relates to this Agreement or the Motor Vehicle securing this Agreement. 'Claim' has the broadest possible

---

Although the *Peterson* factors, as stated, are largely inapplicable here, if they were applied so as to encompass Duke Capital's conduct in prior debt collection suits, they would require a finding that Duke Capital has waived its right to compel arbitration. Duke Capital's pursuit of state debt collection suits against each Plaintiff through final judgment is simply inconsistent with its right to arbitrate. Duke Capital substantially invoked litigation machinery, failed to seek arbitration, pursued the state court litigation through judgment, and prejudiced Plaintiffs since final judgment has now been entered against them in Utah state court. In short, all of the applicable *Peterson* factors weigh in favor of a finding that Duke Capital has waived its right to compel arbitration.

> meaning, and includes initial claims, counterclaims, cross-claims and third-party claims, federal, state, local and administrative claims and claims which arose before the effective date of this Arbitration Provision. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity and claims for monetary damages and injunctive or declaratory relief.

ECF No. 18-1 at 2. Svensson and Bean's arbitration provisions are similarly broad, giving the words "dispute" and "disputes" "the broadest possible meaning" and stating that they "include, without limitation" a list of ten enumerated disputes that closely mirror those listed in Castillo's arbitration provision. *See* ECF Nos. 19-1 at 3, 19-2 at 3. And yet, in each of the three debt collection suits that Duke Capital pursued against Plaintiffs, it chose to reject these sweeping arbitration provisions in favor of litigation. Duke Capital did not merely initiate each of the three debt collection suits and then decide to pursue arbitration before reaching judgment; Duke Capital pursued all three debt collection suits to final judgment. *Contra BOSC*, 853 F.3d at 1173–76 (declining to find waiver of the right to arbitrate in substantial part because, although the party who allegedly waived the right to arbitrate initiated state court litigation, that party never served the opposing parties with process and dismissed the litigation before the court could even rule on the dispute). It is only now, when Duke Capital has been placed on the defensive by Plaintiffs' remedial litigation regarding its debt collection practices, that Duke Capital invokes the arbitration provisions it previously eschewed. Duke Capital knew precisely how broad those arbitration provisions were and consciously relinquished them in favor of litigation when doing so was to its

9

benefit. Accordingly, the court finds that Duke Capital intentionally relinquished its known right to arbitrate.[8]

The court finds additional support for its conclusion that Duke Capital waived its right to compel arbitration in *Reifenberger v. Autovest LLC*, No. 2:20-cv-571, 2021 WL 212237 (D. Utah Jan. 21, 2021) (unpublished). In *Reifenberger*, a plaintiff argued that a company waived its right to pursue arbitration when it brought a state court debt collection action against the plaintiff. *Id.* at *4. Although the parties disputed whether state or federal law applied to the issue of waiver, Judge Kimball ultimately found that there was no waiver based on the particular language of their arbitration agreement. *Id.* The parties' arbitration agreement contained a specific provision stating that "[e]ven if you and we elect to litigate a Claim in court, you or we may elect to arbitrate any other Claim, including a new Claim in that lawsuit or any other lawsuit. Nothing in that litigation

---

[8] The court finds further support for its conclusion that Duke Capital waived its right to compel arbitration in *Nelson*. In *Nelson*, the Utah Court of Appeals held that a debt collection company waived its right to compel arbitration of debtors' individual and putative class claims under the FDCPA and the UCSPA when the company litigated separate debt collection suits against the debtors despite having arbitration agreements with the debtors that were governed by the FAA. 374 P.3d at 28–32. The *Nelson* court found that both elements of Utah's arbitration waiver law were satisfied because the debt collection company "substantially participated" in prior debt collection suits, which constituted "underlying litigation" inconsistent with the intent to arbitrate, and this participation was prejudicial to the debtors. *Id.* The *Nelson* court affirmed that the relevant "underlying cases" were the debt collection actions, which served as the basis of the later action and were "brought on the same account agreement with the same arbitration clause in it." *Id.* at 31.

Although the court is not bound by a state appellate court decision, and although the *Nelson* court applied Utah arbitration waiver law, the court finds the case to be persuasive for its consideration of prior debt collection litigation in assessing waiver. Here, in filing state debt collection suits against Plaintiffs and obtaining default judgment against all three of them, Duke Capital intentionally relinquished its known right to compel arbitration. This is sufficient to establish Utah contractual waiver.

waives any rights in this Agreement." *Id.* at *5. In light of this contractual language, Judge Kimball found that the company's prior state court debt collection action did not constitute a waiver of its right to arbitrate the dispute before the court because the company had not acted in a manner inconsistent with its contractual rights. *Id.* He reasoned that the claims in the federal court action were different from the claims at issue in the state debt collection action and, "most importantly," the company's "request to compel arbitration in this subsequent lawsuit is expressly allowed in the parties' agreement." *Id.* Unlike the arbitration provision in *Reifenberger*, the arbitration agreements at issue here do not contain a provision giving the parties the right to pick and choose the claims that are subject to arbitration. At oral argument, counsel confirmed that no such provisions are present in the agreements. The absence of any provisions in the arbitration agreements at issue here stating that litigating "claims" or "disputes" within the meaning of the agreements would not constitute a waiver of the right to arbitrate other claims or disputes clearly distinguishes *Reifenberger* from this case.

## CONCLUSION AND ORDER

Based on the foregoing, the court finds that Duke Capital waived its right to compel arbitration under the terms of all three of Plaintiffs' Notes. Accordingly, it is HEREBY ORDERED that Duke Capital's Motion to Compel Arbitration (ECF No. 17) is DENIED.

DATED February 25, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge