IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SARAH CASTILLO, VIKTORIA SVENSSON, and ROBIN BEAN,<br><br>Plaintiffs,<br><br>v.<br><br>DUKE CAPITAL, LLC,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS<br><br>Case No. 2:20-cv-00229-JNP-JCB<br><br>District Judge Jill N. Parrish<br>Magistrate Judge Jared C. Bennet |

Sarah Castillo, Viktoria Svensson, and Robin Bean (collectively, "Plaintiffs") allege that Duke Capital, LLC violated the Fair Debt Collection Practices Act ("FDCPA") and committed a variety of common law torts. Before the court is Defendant Duke Capital's motion to dismiss Plaintiffs' amended complaint. ECF No. 82 ("Def.'s Mot."). For the reasons set out below, this motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

In 2019, Duke Capital filed lawsuits in Utah state court against Plaintiffs to recover debts it had purchased from prior creditors. Against all three Plaintiffs, it obtained a default judgment. It then sought to enforce the judgments through garnishment proceedings. *See* ECF No. 78 ("Previous Mem. Decision and Order") at 1–2 (providing more detail). Plaintiffs then initiated this action as a putative class-action suit in 2020 in a Utah district court. Duke Capital removed the action to this court.

After removal, Plaintiffs filed their first amended complaint. ECF No. 5 ("First Am. Compl."). In the amended complaint, Plaintiffs raised five claims: (1) violations of the FDCPA, 15

U.S.C. § 1692 *et seq.*; (2) violations of the Utah Consumer Sales Protection Act ("UCSPA"), Utah Code Ann. § 13-11-1 *et seq.*; (3) a request for declaratory judgment that Duke Capital lacked standing to obtain any judgment in the state courts and that the default judgments on the debts were therefore void and unenforceable; (4) intrusion upon seclusion; and (5) unjust enrichment. *Id.* at 9–15. The UCSPA claim was based on the allegation that Duke Capital was not registered with the Utah Division of Corporations and Commercial Code and did not have a bond as required under the Utah Collection Agency Act ("UCAA"), Utah Code Ann. § 12-1-1 *et seq.*[1] First Am. Compl. at 10–12.

Duke Capital moved for summary judgment on all of Plaintiffs' claims. ECF No. 59 ("Def.'s Mot. for Summ. J."). Its motion was based on four grounds: (1) the UCAA's licensing requirement did not apply to Duke Capital; (2) all of Plaintiffs' claims were barred by the doctrine of claim preclusion; (3) all of Plaintiffs' claims were barred by the doctrine of issue preclusion; and (4) UCAA licensing violations by themselves cannot support a claim under the UCSPA. *Id.* Plaintiffs opposed the motion on the merits and moved to amend their complaint to "remove all parts of their claims which could be interpreted as a collateral attack on the prior [state court] judgment[s]." ECF No. 65 ("Pls.' Mem. in Opp'n to Mot. for Summ J."); ECF No. 66 ("Pl.s' Mot. to Amend") at 1–2. Duke Capital, in turn, opposed Plaintiffs' motion to amend on futility grounds. ECF No. 73 ("Def.'s Mem. In Opp'n to Mot. to Amend). In its briefing, Duke Capital conceded its first and third arguments. ECF No. 72 ("Reply Mem. in Supp. of Mot. for Summ. J.") at 8 n.15.

---

[1] The UCAA has since been mostly repealed. *See Fell v. Alco Cap. Grp. LLC*, 2023 UT App 127, 538 P.3d 1249, 1251 n.4 (Utah App. Ct. 2024). The court cites the applicable statutory provisions that were in effect immediately before the repeal.

The court was thus left to rule on Duke Capital's second and fourth arguments for summary judgment, based on claim preclusion and the significance of UCAA violations.

The court issued a memorandum decision and order ruling on Duke Capital's remaining arguments for summary judgment and Plaintiffs' request to amend their complaint. *See* Previous Mem. Decision and Order. With respect to claim preclusion, the court denied summary judgment, holding that Plaintiffs' claims—including their FDCPA claims—did not arise out of the same claim as the earlier debt collection actions under Utah's claim preclusion doctrine. *Id.* at 6–7. With respect to Plaintiffs' claims under the UCSPA and Utah common law, the court granted Duke Capital's motion for summary judgment, reasoning that a violation of the UCAA was not sufficient to create a claim under Utah state law. *Id.* at 8–9. At the same time, the court granted Plaintiffs' motion to amend their complaint in part. *Id.* at 9. Because it found that Plaintiffs' FDCPA claims were not barred by claim preclusion, the court granted Plaintiffs leave to amend their complaint to remove any allegations that could be interpreted as a collateral attack on the underlying state court judgment. *Id.*

Plaintiffs then filed a second amended complaint. ECF No. 79 ("Second Amm. Compl."). In this operative complaint, Plaintiffs removed their request for declaratory judgment regarding state debt collection actions and their claims under the UCSPA. But otherwise, the second amended complaint remained largely unchanged, maintaining claims under the FDCPA and claims for intrusion upon seclusion and unjust enrichment under Utah common law. *See id.* at 10–13.

Duke Capital now brings a motion to dismiss Plaintiff's second amended complaint for failure to state a claim upon which relief can be granted. Def.'s Mot. at 2 (citing Fed. R. Civ. P. 12(b)). It raises three arguments: (1) all of Plaintiffs' claims are barred under the doctrine of claim preclusion because they arise out of the same transaction as the underlying debt collection actions;

3

(2) Plaintiffs fail to allege facts sufficient to state a FDCPA claim; and (3) Plaintiffs fail to allege facts sufficient to state common law claims. *Id.* at 11. In response, Plaintiffs first argue that Duke Capital's motion is procedurally improper. ECF No. 87 ("Pls.' Mem. in Opp'n") at 2–4. Namely, they argue that Duke Capital's motion is untimely under Federal Rule of Civil Procedure 12(b), which requires a party to raise a 12(b) motion before answering the complaint. *Id.* Plaintiffs also respond to Duke Capital's first two arguments on the merits, arguing that their claims are not barred by claim preclusion and that the alleged facts do make out an FDCPA claim. *Id.* at 4–6. Plaintiffs, however, concede their common law claims and stipulate to their dismissal. *Id.* at 6. Duke Capital maintains that its motion is timely and continues to defend it on the merits. ECF No. 89 ("Def.'s Reply").

## DISCUSSION

Before considering the merits of Duke Capital's motion, the court first must determine whether this motion should even be considered. Plaintiffs argue the motion is untimely under Federal Rule of Civil Procedure 12(b) and thus should be denied by the court. According to the text of Rule 12(b), a party's 12(b) motion "must be made *before* pleading." Fed. R. Civ. P. 12(b) (emphasis added). This language suggests that Duke Capital's Rule 12(b) motion, filed over five years after its answer, is clearly untimely. *See Leonard v. Enter. Rent a Car*, 279 F.3d 967, 971 n.6 (11th Cir. 2002) (describing a post-answer 12(b) motion as a "nullity"). Duke Capital raises two arguments for departing from the strict letter of Rule 12(b). The court ultimately finds these arguments unpersuasive. Neither case law nor broader considerations of justice and judicial

efficiency support departing from Rule 12(b)'s text.² For these reasons, Duke Capital's motion must be denied as procedurally improper.³

---

² In addition to Duke Capital's arguments, there are three common practices of departing from Rule 12(b)'s timing requirement that are worth noting.

First, there are instances where courts permit "Rule 12(b) motions filed after the answer to a complaint if the Rule 12(b) defense was raised in the answer." *Genzyme Corp. v. Novartis Gene Therapies, Inc.*, No. CV 21-1736-RGA, 2023 WL 1965090, at *3 (D. Del. Feb. 13, 2023). *See also Toyota Motor Sales, U.S.A., Inc. v. Allen Interchange LLC*, 2023 WL 5207389, at *6 (D. Minn. 2023); *Thurlow v. Hospital*, 2017 WL 90345, at *7 (D. Me. 2017). This practice may appear to justify Duke Capital's current Motion because it raised an affirmative defense in its Answer that Plaintiffs' Complaint fails to state a claim upon which relief may be granted." ECF No. 7 ("Answer") at 25. But these cases involve relatively short time gaps between the answer and the untimely 12(b) motion, which are filed well before discovery. *See, e.g.*, *Esselstrom v. Tempus AI, Inc.*, 2024 WL 4765160, at *2 (W.D. Wash. 2024) (involving an instance where an answer was filed 12 minutes before a 12(b) motion); *Walker v. Mead*, 2014 WL 2778162, *1 (M.D. Fla. 2014) (involving a 12(b) motion filed contemporaneously with the answer). By contrast, the untimely motion here was filed over five years after the answer and well after discovery was underway.

Second, courts often permit defendants to file post-answer 12(b) motions if they are challenging new claims brought in an amended complaint *See City of Las Cruces v. Lofts at Alameda, LLC*, 591 F. Supp. 3d 1038, 1050–51 (D.N.M. 2022) (collecting cases). But, crucially, defendants do not get "a second bite of the apple" simply because the plaintiffs filed an amended complaint. *Id.* Thus, "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading." WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE, § 1388 (3d ed. 2004). As discussed below, Duke Capital presents no persuasive reason why the defense raised in its motion could not have been asserted before the amended pleading.

Third, courts often permit untimely Rule 12(b) motions when they can be treated as timely motions for judgment on the pleadings under Rule 12(c). *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). ("If the defendant makes the motion after filing the answer, the motion should generally be treated as a motion for judgment on the pleadings."). However, Rule 12(c) has its own timing requirements—requiring such motions to occur "[a]fter the pleadings are closed" and "early enough not to delay trial." Fed. R. Civ. P. 12(c). Here, pleadings are not yet closed given that Duke Capital has not yet filed an answer in response to the operative amended complaint. Moreover, given that the parties have already briefed and argued a motion for summary judgment, a 12(c) motion at this time may even delay trial. Therefore, Duke Capital's motion, even if interpreted as a 12(c) motion, would still be untimely and procedurally barred.

³ Nevertheless, Duke Capital's motion does raise an important and contested question of Utah law: If a plaintiff obtains a default judgment in a debt collection, are the defendant's later claims against the plaintiff under the FDCPA—alleging that the debt collection action was unlawfully brought—

I.   **New Case Law**

Duke Capital's first argument for departing from the text of Rule 12(b) is that its motion "is based upon case law that did not exist when Duke answered the initial complaint." Def.'s Reply at 2. In support of this argument, Duke Capital notes that "[c]onsecutive Rule 12 motions to dismiss are permitted when new defenses become available that were not available at the time of the previous complaint(s)." *Id.* at 3 (citing *SCO Grp., Inc. v. Novell, Inc.*, 377 F.Supp.2d 1145, 1151 (D. Utah 2005)). More specifically, Duke Capital argues that it could not have raised its Rule 12(b) motion before its answer because it rests on Utah Court of Appeals cases decided after it filed its answer. *Id.* But even if one accepts Duke Capital's premise that Rule 12(b) only bars motions that could have been made before the party's responsive pleading,[4] the argument fails because it

---

barred by Utah's doctrine of claim preclusion? The court previously answered this question in its order on Duke Capital's motion for summary judgment. *See* Previous Mem. Decision and Order at 5–8. But this question has yet to be resolved by the Utah Supreme Court. After careful consideration, the court believes that it is in the interest of justice to have this question authoritatively resolved before this case proceeds further and considerable time and resources are spent on class certification. Therefore, the court will certify this question to the Utah Supreme Court under Rule 41 of the Utah Rules of Appellate Procedure. If the Utah Supreme Court answers this question, the court will exercise its authority under Fed. R. Civ. P. 54(b) to "freel[y] . . . reconsider [its] earlier interlocutory orders" related to claim preclusion, either sua sponnte or upon timely motion. *Been v. O.K. Indus.*, Inc., 495 F.3d 1217, 1225 (10th Cir. 2007).

[4] There is some reason to be skeptical of this premise because it may improperly conflate two different subsections of Rule 12. Rule 12(g) prevents a party from making a Rule 12 motion "raising a defense or objection that was available to the party but omitted from its earlier [Rule 12] motion." Fed. R. Civ. P. 12(g). Unsurprisingly, courts follow the text of Rule 12(g) and permit a subsequent Rule 12 motion when it raises a defense that was not previously available. *See, e.g.*, *SCO Grp., Inc. v. Novell, Inc.*, 377 F.Supp.2d 1145, 1150–51 (D. Utah 2005); *Thorn v. New York City Dep't of Soc. Servs.*, 523 F. Supp. 1193, 1196 n. 1 (S.D.N.Y. 1981). By contrast, the text of Rule 12(b) is unqualified—categorically barring post-answer Rule 12 motions, without any carveout for motions that were previously unavailable. Duke Capital's argument ignores this conspicuous difference, as if Rule 12(b) was written with Rule 12(g)'s carveout. Of course, this textual difference may not be dispositive. But it should at least be considered before following case law interpreting Rule 12(g).

mischaracterizes the case law. None of the new appellate decisions cited by Duke Capital meaningfully supports its current Rule 12(b) motion.[5]

    A.    *Haskell I* and *II*

The first two cases on which Duke Capital relies are *Haskell v. Wakefield & Assocs. Inc.*, 500 P.3d 950 (Utah App. Ct. 2021) (hereinafter "*Haskell I*") and *Haskell v. Wakefield & Assocs., Inc.*, 557 P.3d 245 (Utah App. Ct. 2024) (hereinafter "*Haskell II*"). Def.'s Reply at 3. Duke Capital argues that these two decisions show that the Utah Court of Appeals implicitly supports a Utah district court's holding regarding the UCAA. *Id.* at 5; Def.'s Mot. at 13–14. Based on this inference, these opinions supposedly provide new support for Duke Capital's current motion that was not available when Duke Capital filed its answer. Def.'s Reply at 3. But *Haskell I* and *II* simply do not address the UCAA.

To see why Duke Capital's arguments regarding *Haskell I* and *II* are not helpful, it is necessary to understand the full context of these opinions. Both appellate opinions involve the same transaction, where a debt collection agency had previously obtained a default judgment against the plaintiff. *Haskell I*, 500 P.3d at 952. The plaintiff then brought an action in state court alleging that the judgment was void because the agency had not been properly licensed under the UCAA. *Id.* In the first state court action, the trial court granted the debt collection agency's motion for judgment on the pleadings for several reasons, including by holding that

> [the UCAA] is merely a business licensure statute, and therefore, in an action to collect on a debt, a debtor cannot raise as a defense

---

[5] Even if the Utah Court of Appeals opinions did support Duke Capital's current motion, they would only be persuasive authority. *See Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1221 (10th Cir. 2021) ("When interpreting Utah's law, [federal courts] must look to rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule.") (citation modified).

> that the unlicensed debt collector lacks standing to file or maintain that action. Likewise, a technical violation of [the UCAA] does not give a debtor the right or standing to challenge or otherwise seek to set aside a judgment entered in favor of an unlicensed debt collector.

*See* ECF No. 82-1 at 2; *Haskell I*, 500 P.3d at 953.

Duke Capital contends that *Haskell I* and *II* show that the Utah Court of Appeals implicitly agreed with this conclusion about the UCAA and thus support the defense raised in Duke Capital's 12(b) motion. *See* Def.'s Mot. at 5. But *Haskell I* and *II* do not express, explicitly or implicitly, any views about this lower court holding.

After the *Haskell* plaintiff lost his first state court action, he brought a second state court action against the debt collection agency. *Haskell I*, 500 P.3d at 953–54. The Utah district court dismissed the second action on the grounds that it was barred under the doctrine of claim preclusion. *Id.* at 954. It is this second state court action—not the first state court action—that was the basis for appeals in *Haskell I* and *II*.

In *Haskell I*, the Utah Court of Appeals simply addressed whether the district court correctly applied the doctrine of claim preclusion. *Id.* It reasoned that the first district court in the earlier action had not issued a final judgment on the merits and, therefore, claim preclusion did not apply. *Id.* at 957. *Haskell I* did not "disturb[ ] or otherwise question[ ]" the first district court's substantive conclusion about UCCA. Def.'s Reply at 5. But this is not surprising. The *Haskell I* court was resolving a narrow procedural issue about the preclusive effect of the first court's decision and thus had no need to opine on the substance of the court's holding regarding the UCCA. As the Utah Supreme Court has observed, "[w]hen a party fails to raise and argue an issue on appeal . . . that issue is waived and will typically not be addressed by the appellate court." *State v. Johnson*, 416 P.3d 443 (Utah 2017). The Utah Court of Appeals' silence on the merits of the first

district court's reasoning likely reveals little about its own views on the merits and instead reflects the standard practice of addressing only the issues raised on appeal.

After *Haskell I*, the case was remanded back to the second district court. *Haskell II,* 557 P.3d at 248. On remand, the debt collection agency argued that the plaintiff's claims were barred by issue preclusion given the earlier state court action. *Id.* The district court agreed and granted the debt agency's motion to dismiss on these grounds. *Id.* at 248–49. The *Haskell* plaintiff then appealed, arguing that issue preclusion should not apply because the first district court had not reached a final judgment on the merits. *Id.* at 249. In *Haskell II*, the Utah Court of Appeals considered only this procedural question. *Id.* Duke Capital suggests that it is significant that the Utah Court of Appeals did not correct the reasoning of the district court in the earlier action. But, for the same reasons discussed earlier, the failure of the *Haskell II* court to venture beyond the procedural issue before it is standard practice and reflects nothing about the Utah Court of Appeal's views on the UCAA.

Duke Capital is thus unpersuasive in arguing that its motion is supported by *Haskell I* and *II*. While the holding of the first district court may support Duke Capital's current motion,[6] *Haskell I* and *II* do not come close to affirming the substance of that holding.

B.     Lebaron

Duke Capital also relies on another case decided by the Utah Court of Appeals after it filed its answer*, LeBaron v. Drs. & Merchants Credit, Inc.*, 547 P.3d 855 (Utah App. Ct. 2024), *cert. denied sub nom. LeBaron v. Drs. & Merchants Credit*, 554 P.3d 987 (Utah 2024). Def.'s Reply at

---

[6] The court is not expressing any views about whether the district court's holding in fact supports Duke Capital's motion.

9

3. *LeBaron* similarly involves a debt collection agency obtaining a default judgment against a plaintiff. 547 P.3d at 857. The plaintiff then brought an action against the agency for pursuing the debt collection action without a legal right or license to do so. *Id.* Like Plaintiffs here, the *LeBaron* plaintiff sought civil remedies under various state law theories and the FDCPA. *Id.* The district court first dismissed the state law claims on summary judgment and found that the agency's failure to register under the UCAA did not establish a private cause of action under state law. *Id.* The district court then dismissed the FDCPA claim based on claim preclusion, finding that the earlier debt recovery action precluded the subsequent FDCPA claim under Utah law. *Id.* In doing so, the district court noted that it was persuaded by the reasoning affirmed by the Tenth Circuit in *McMurray v. Forsythe Fin., LLC*, No. 21-4014, 2023 WL 5938580 (10th Cir. Sept. 12, 2023). *LeBaron.*, 547 P.3d at 858. On appeal, the Utah Court of Appeals affirmed. *Id.* at 859.

Duke Capital suggests that *LeBaron* "demonstrates the Utah courts' agreement with [*McMurray*] when considering whether claims arising from the filing of a collection lawsuit are precluded in a subsequent action." Def.'s Mot. at 6. On this interpretation, *LeBaron* resolves a major dispute about Utah claim preclusion law and would substantially support Duke Capital's current motion to dismiss Plaintiff's motion on claim preclusion grounds. *Id.* at 6–7.

But this overstates the significance of *LeBaron*. As Duke Capital concedes, the Utah Court of Appeals did not endorse the reasoning of *McMurray* but rather "affirmed on different procedural grounds." Def.'s Mot. at 6. The Court of Appeals first affirmed the dismissal of state claims on grounds having nothing to do with claim preclusion. *LeBaron.*, 547 P.3d at 858. It then affirmed the dismissal of the plaintiff's FDCPA on the grounds that the plaintiff had "not preserved for appeal any argument that her FDCPA claim has viability distinct from her state law claim under the Utah Consumer Sales Protection Act." *Id.* at 859. The court's one-paragraph analysis of the

FDCPA claim did not even mention claim preclusion or *McMurray*, let alone endorse *McMurray*'s approach to claim preclusion. Indeed, as Plaintiffs point out, the only discussion of claim preclusion in *LeBaron* occurred in now Justice Jill M. Pohlman's separate opinion. *Id*. at 862 (Pohlman, J., concurring in part and dissenting in part). Justice Pohlman explicitly noted that "[i]n [her] view" *McMurray* had "misapplied Utah's claim preclusion test." *Id.* She then noted that she would ultimately hold that "[the plaintiff's] FDCPA claim is not precluded under Utah's claim preclusion doctrine" by the previous debt collection action. *Id.* at 863. Thus, the only member of the *LeBaron* panel to reach the issue of claim preclusion explicitly repudiated Duke Capital's position. *See also* Pls.' Mem. in Opp'n at 6.

Duke Capital argues that the rest of the panel's decision not to join Justice Pohlman's opinion "strengthens a conclusion that the panel did not share her views [on claim preclusion]." Def.'s Reply at 7–8. Yet the opposite inference can just as easily be drawn. Perhaps the failure of the other judges to address claim preclusion in the face of Justice Pohlman's opinion suggests some acquiesce to her views. But at bottom, the majority simply did not opine on the claim preclusion issue.

In short, Duke Capital's argument that *LeBaron* supports its motion—like its argument regarding *Haskell I* and *II*—rests on "the theory of the dog that did not bark." *Cf. Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 592 (1980). According to Duke Capital, the failure of the Utah Court of Appeals to correct the lower court's application of *McMurray* reflects agreement. Def.'s Reply at 7. But if one takes the Utah Court of Appeals at its word, the issue simply was not preserved for appeal and thus not addressed. *LeBaron.*, 547 P.3d at 859. Perhaps Duke Capital can divine some further meaning in the silence of the Utah Court of Appeals. But to the court, the silence here is

11

just silence. The court thus finds that the appellate decision in *LeBaron* does not support Duke Capital's motion, and Duke Capital had no reason to wait until *LeBaron* to bring its motion.

## II.        Expediting the Disposition of the Case

Duke Capital's second argument for departing from the timing requirement of Rule 12(b) invokes a much broader exception. It asserts that "courts have frequently heard subsequent Rule 12 motions that have not been brought for purposes of delay . . . where . . . considering such a motion would expedite the resolution of the case on the merits." Def.'s Reply at 3.

Duke Capital is correct that there are cases using analogous language when departing from Rule 12's timing requirements. *See Thorn v. New York City Dep't of Soc. Servs.*, 523 F. Supp. 1193, 1196 n.1 (S.D.N.Y. 1981) (considering a 12(b) motion on the merits, despite noting that it was untimely under Rule 12(g), "because it was not interposed for delay, and its consideration will expedite the disposition of the case on the merits."); *SCO Grp., Inc. v. Novell, Inc.*, 377 F. Supp. 2d 1145, 1151, (D. Utah 2005) (considering a 12(b) motion, despite timeliness concerns under Rule 12(g), because "the motion does not appear to be brought for purposes of delay"). Duke Capital cites other cases in favor of this broad exception to Rule 12(b). *See* Def.'s Reply at 16. Most of these cases, like *Thorn* and *SCO Group*, in fact involve departures from Rule 12(g)'s timing requirement. *See Gundy v. Cal. Dep't of Corr. & Rehab.*, No. 1:12-cv-01020-LJO-MJS, 2013 U.S. Dist. LEXIS 18185, at *16-17 (E.D. Cal. Feb. 8, 2013); *Aldar Tobacco Grp., LLC v. Am. Cigarette Co.*, No. 08-62018-CIV-JORDAN, 2009 U.S. Dist. LEXIS 139558, at *5-6 (S.D. Fla. Sep. 14, 2009). *But see Overton v. Wyeth, Inc.*, No. CA 10-0491-KD-C, 2011 WL 1343392, at (S.D. Ala. Mar. 15, 2011), at *3–5 *report and recommendation adopted sub nom. Overton v. Wyeth, LLC*, No. CIV.A. 10-00491-KD-C, 2011 WL 1343391 (S.D. Ala. Apr. 7, 2011) (involving Rule 12(b)'s timeliness requirement).

As noted earlier, however, there are important differences between the language of Rule 12(g) and Rule 12(b), which suggest the case law involving Rule 12(g) may be inapplicable. Rule 12(g)'s restriction on successive motions is explicitly qualified and only applies to motions "raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g). By contrast, Rule 12(b)'s restriction on post-answer motions is unqualified. *Id.* 12(b). This textual difference suggests the need for heightened caution before departing from Rule 12(b)'s timeliness requirement.

Other factors also limit the persuasive value of the cases Duke Capital cites. In *Thorn*, the court ruled on the municipality's untimely 12(b) motion in part because an individual defendant had brought a timely 12(b) motion raising the same issues. 523 F.Supp. at 1196 n.1. Because of this, the underlying issues already had to be decided. This unique consideration is obviously not present here. The *Overton* court only pointed to an exception to Rule 12(b) as an alternative holding. 2011 WL 1343392, at *3–5. It first found that the Rule 12(b) motion was timely because it was raised in response to new matters contained in an amended complaint that could not have been challenged earlier. *Id.*, at *4. When it reached its alternative holding circumventing Rule 12(b)'s timing requirements, it did so on the grounds that it was "abundantly clear" that the motion would prevail on the merits and "that the substance of this motion [would] only be reurged at a later stage in [the] proceeding." *Id.* at *5. This suggests a significantly narrower exception to Rule 12(b) then what Duke Capital is now proposing.

Moreover, any value in the cases Duke Capital cites is tempered by other cases adhering to Rule 12's timing requirements. In perhaps the most analogous case, the United States District Court for the District of New Mexico considered a defendant's post-answer Rule 12(b)(6) motion that was raised after the plaintiffs amended their complaint. *City of Las Cruces v. Lofts at Alameda,*

13

*LLC*, 591 F. Supp. 3d 1038, 1050 (D.N.M. 2022). The court dismissed the motion as untimely because the defendant—just like Duke Capital—could have raised the Rule 12(b)(6) motion pre-answer in response to the plaintiffs' original complaint. *Id.* at 1051. Other cases similarly enforce Rule 12's timing requirements and dismiss Rule 12 motions as untimely under either Rule 12(b) or Rule 12(g). *See, e.g.*, *Schluter Sys., LP v. Sanven Corp.*, No. 8:22-CV-155, 2022 WL 17617807, at *3 (N.D.N.Y. Dec. 13, 2022) (Rule 12(b)); *Neelu Aviation, LLC v. Boca Aircraft Maint., LLC*, No. 18-CV-81445, 2019 WL 4345685, at *3 (S.D. Fla. Sept. 12, 2019) (Rule 12(b)); *Rowley v. McMillan*, 502 F.2d 1326, 1332–33 (4th Cir. 1974) (Rule 12(g)); *Lederman v. United States*, 131 F. Supp. 2d 46, 58 (D.D.C. 2001) (Rule 12(g)).

The court is ultimately not persuaded to permit the broad exception to Rule 12(b)'s timing requirement proposed by Duke Capital. The Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Here, Plaintiffs alleged FDCPA claims when they first filed a complaint in federal court. *See* First Am. Compl. at 9–10. Duke Capital chose to answer the complaint on April 14, 2020. ECF No. 7 ("Answer"). Now, more than five years later—after discovery is well under way and Duke Capital's motion for summary judgment was extensively briefed and considered by this court—Duke Capital wishes to circumvent the plain language of Rule 12(b). Under these circumstances, the interests of justice and judicial efficiency do not support giving Duke Capital a "second bite at the apple" for a motion it could and should have filed five years earlier. *City of Las Cruces,* 591 F. Supp. 3d at 1051. The Federal Rules of Civil Procedure are not "a mere technicality" but instead "are the primary tool with which the [c]ourt and the parties can effectively and predictably labor within the civil justice system and

manage the litigation process." *Neelu Aviation*, 2019 WL 4345685, at *3. Accordingly, the court rejects Duke Capital's suggestion to circumvent Rule 12(b).

**CONCLUSION AND ORDER**

For the foregoing reasons, Duke Capital's motion to dismiss, ECF No. 82, is **GRANTED IN PART AND DENIED IN PART**. Pursuant to Plaintiffs' stipulation Duke Capital's motion to dismiss is granted with respect to Plaintiffs' intrusion upon seclusion and unjust enrichment claims. With respect to Plaintiffs' remaining claims, Duke Capital's motion to dismiss is denied as untimely under the Federal Rules of Civil Procedure.

DATED September 25, 2025.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge